**DENSON v. MAPES et al.**

**No. 552.**

District Court, D. Nevada.

April 23, 1947.

Samuel Platt and John S. Sinai, both of Reno, Nev., for plaintiff.

H. R. Cooke and John D. Furrh, Jr., both of Reno, Nev., for defendants.

FOLEY, District Judge.

Plaintiff prays for a decree for the specific performance of the agreement which was admitted in evidence as Exhibit "C" and which is as follows:

"This Agreement entered into this 24th day of September, 1945, by and between Irene Gladys Mapes, also known as Mrs. Chas. W. Mapes, of Reno, Nevada, hereinafter designated 'first party,' and Charles W. Mapes, Jr., of the same place, and P. G. Denson, of Visalia, California, hereinafter designated 'second parties'; Witnesseth:

"That whereas, the first party intends to construct a new fireproof hotel, apartment, store building and garage, the total expense of which is now estimated at $800,-000.00, or thereabouts, at the Southeast corner of Virginia and First Streets in the City of Reno, Nevada, having a frontage on Virginia Street of 167.64 feet and a frontage on First Street of 139.55 feet, in accordance with plans, a copy of which are annexed hereto, and specifications which are to be prepared by The Moorehead Company of Los Angeles, California, and which plans and specifications must be approved in writing by the parties hereto before any lease on said premises shall become effective; and

"Whereas, inclusion of 12 feet of said frontage on Virginia Street, extending 139.-55 feet easterly from Virginia Street is conditioned upon the first party consummating the purchase thereof from the City of Reno, negotiations therefor with the said City being now in progress; and

"Whereas, it is contemplated the first party shall grant a lease to the second parties and the second parties shall receive a lease from the first party of all of said structure when completed, except eight (8) store spaces on Virginia Street and three

(3) store spaces on First Street, on the first floor of said structure, as shown by the preliminary plans dated August 31, 1945 made by the said Moorehead Company, a copy whereof is annexed hereto and made a part hereof.

"Now therefore, this Agreement further witnesseth:

"1. That in consideration of the premises and for other valuable and sufficient consideration present and received the receipt whereof is hereby mutually acknowledged by the parties, that contemporaneously with the execution and delivery hereof, the second parties shall deposit with the first party the sum of $20,000.00 in cash as a guarantee of their good faith and by way of inducement for the first party to enter into this agreement.

"2. That the first party agrees to complete said structure at said location subsequently, according to said completed and approved plans, and specifications to be prepared and approved, on or before January 1, 1947.

"3. The parties hereto shall immediately enter into a discussion with each other as to the terms, conditions and details of said lease; that the period of said lease shall be not less than twenty (20) years from the date the premises are in condition for possession thereof to be delivered. The parties hereto agree that when such terms, conditions and details have been mutually agreed upon they shall immediately thereupon enter into a written lease with each other for all of said structure when completed, with the exceptions above noted; provided, that the terms, conditions and details of said lease can be mutually agreed upon between the parties hereto within 10 days after the written contract for the construction of said structure has been entered into by the first party and within 10 days after the actual construction has been commenced.

"4. That said lease shall provide, among other things, that as soon as the hotel, rooms and apartments in said structure are ready for occupancy by the second parties, the second parties will at their own cost, now estimated at $150,000.00, provide and place in said structure such furniture, fixtures and equipment as shall be suitable, proper and necessary to furnish and equip the same as a first class hotel and apartment building.

"5. That the rental for said structure when completed, with the exceptions noted above, shall be as follows:

5% of gross receipts from food sales

10% of gross receipts from liquors, wines and beer sales

30% of gross receipts from hotel, rooms and apartments

"All rentals payable monthly.

"Provided, that in the event the said percentage of gross receipts shall not equal monthly—

| | |
|---|---|
| For coffee shop, dining room and kitchen, | $ 600.00 |
| For lounge, | 1000.00 |
| For Skyroom, | 333.33 |
| For Mezzanine Floor banquet room, | 150.00 |

then in such case, the second parties shall make up and pay to first party the deficiency on any of said four classifications so failing.

"If the lease is to include the garage, then the second parties shall pay monthly 10% of the gross garage receipts, or, if the first party leases the garage to a third person, the second parties are to have the privilege of garage service for their guests on terms to be mutually agreed upon.

"6. That said lease shall provide that the second parties are to execute and deliver to the first party a first chattel mortgage covering the furniture, fixtures and equipment placed in the hotel and apartments as aforesaid, to secure the rental payments as provided in said lease.

"7. That after said lease is executed between the parties hereto and if the second parties fail either to provide and place said furniture, fixtures and equipment in said hotel, rooms and apartments as aforesaid, or if they fail to execute and deliver said chattel mortgage as such security as herein required, then the cash so deposited with the first party shall belong absolutely to the first party as a consideration for her entering into this agreement.

"8. If after said lease is executed between the parties hereto as above provided, and the second parties provide and place

said furniture, fixtures and equipment in said hotel and apartments as aforesaid, and the second parties execute and deliver said chattel mortgage as security as herein required, then the cash so deposited with the first party shall belong to and be delivered to said second parties by the first party.

"9. The second parties as a part of said lease, will guarantee to said first party that the total annual income from the entire building which the first party will receive will be in an amount at least sufficient to cover payments required of the first party for taxes, upkeep, insurance, interest on borrowed money, and to amortize the cost of said building within said lease period.

"10. The said lease shall contain all necessary provisions to fully effectuate the intent and purposes of the parties hereto as stated in this preliminary agreement and also to definitely set forth all usual or necessary conditions to the end that the rights and interests of each party shall be properly conserved and protected.

"11. Time is of the essence of each and every term, covenant and agreement herein mentioned.

"In witness whereof, the parties hereto have hereunto set their hands, the day and year first above written.

"/s/ Irene Gladys Mapes
"First Party
"/s/ Charles W. Mapes, Jr.
"/s/ P. G. Denson
"Second Party
"Witnesses to the Signature of First Party:
"/s/ B. A. Yparraguirre
"/s/ H. R. Cooke
"Witnesses to the Signature of Charles W. Mapes, Jr.:
"/s/ H. R. Cooke
"Witnesses to the Signature of P. G. Denson:
"/s/ H. R. Cooke"

The above agreement though signed by plaintiff on October 4, 1945, has been referred to as the agreement of September 24, 1945.

By their answer the defendants among other things admit the following: The jurisdictional allegations of the complaint; status of defendants; the organization and existence of the Chas. W. Mapes Company, a co-partnership; that defendant Irene Gladys Mapes was, on the 24th day of September, 1945, seized in fee of the lands and premises described in the said agreement of September 24, 1945; that defendant Charles W. Mapes, Jr., is the son of defendant Irene Gladys Mapes and said Charles W. Mapes, Jr., has declined and refused, and continues to decline and refuse, to join as a party plaintiff herein.

The Court, having heard the testimony and having examined the proofs offered by the respective parties, and the cause having been submitted for decision, now finds the facts and states conclusions of law as follows:

Findings of Fact

1. That there was no combination or confederation between defendant Irene Gladys Mapes, Charles W. Mapes, Jr., and Gloria Mapes and the partnership referred to in the amended complaint to do any unlawful act or lawful act by unlawful means for the purpose of defeating the plaintiff or depriving him of any rights or equities to which he was entitled by virtue of the above set forth agreement, or to bring about a repudiation of said agreement; that the interests in this action of said Charles W. Mapes, Jr., are antagonistic and adverse to the plaintiff.

2. That the deed of conveyance of November 6, 1945, by Irene Gladys Mapes to herself as Mrs. Charles W. Mapes, Charles W. Mapes, Jr., and Gloria Mapes as co-partners doing business under the name of Chas. W. Mapes Company of Reno, Nevada, of the lands and premises described in said agreement of September 24, 1945, was made with the knowledge of all the defendants, including Gloria Mapes, of the existence of said agreement of September 24, 1945.

3. That on or about the 24th day of September, 1945, the above named plaintiff and the above named defendants entered into the written agreement above set forth, Exhibit "C."

4. That plaintiff did not, at the request of the defendant Irene Gladys Mapes, or otherwise, engage an architect and contractor to construct the hotel building, the subject matter of this action; that the plaintiff, prior to

the bringing of this action, conferred with the architect and contractor employed on the work and with the defendants on numerous occasions, some of said occasions being as follows: September, 1945, at the Fielding Hotel, San Francisco, California, and again August 14, 1945, at the Sir Francis Drake Hotel, San Francisco, California; present, Irene Gladys Mapes, Charles W. Mapes, Jr., plaintiff P. G. Denson and Francis Harvey Slocum, architect. Plans and sketches of the building were discussed on each of these occasions. Suggestions as to plans and alterations of same were made by parties present including plaintiff, resulting in the adoption of certain of the suggestions of the plaintiff including increasing size of hotel rooms, elimination of one room on river frontage, increasing size of clothes closets connected with rooms, installation of three elevators in building instead of two and the changes in "Skyroom."

5. That the plaintiff was not requested by the defendants, or any of them, to secure a loan in any amount for the defendants for the purpose of financing the construction of said hotel building or for any other purpose; that plaintiff did attempt to assist in the procuring of a loan for the purpose of financing the construction of the contemplated hotel building by interviewing the officials of a bank and insurance company.

6. That plaintiff obtained the plans and specifications in evidence from various firms on furnishings, equipment, accessories and supplies to be installed in the said hotel.

7. That plaintiff did not sell at considerable or any financial sacrifice the hotel of which he was the sole owner and proprietor, namely, the Johnson Hotel, Visalia, California.

8. That the said agreement, Exhibit "C," was not prepared by the attorney for the defendants but was formulated from a document prepared in the office of plaintiff's attorney and altered as a result of conferences between plaintiff, defendant Irene Gladys Mapes, and her attorney, H. R. Cooke; and after such revision the agreement was executed by the defendants, Irene Gladys Mapes and Charles W. Mapes, Jr., and forwarded to plaintiff at Los Angeles, California, and thereafter signed and executed by the plaintiff in the office of the attorney for the defendants.

9. That since the execution of said agreement plaintiff has been ready and willing to receive from defendant Irene Gladys Mapes a lease of said hotel structure containing the terms which were settled and agreed upon by said agreement of September 24, 1945, but that it is impossible to determine whether plaintiff would be willing to execute a lease tendered by defendants after the further negotiation as to terms, conditions and details, provided for in the agreement.

10. That from the date of the execution of said agreement up to and including on or about the 1st day of April, 1946, defendants Irene Gladys Mapes and Charles W. Mapes, Jr., and plaintiff have been conferring at various times and intervals and during said time treated and considered said agreement in full force and effect; that defendants made no representation by word, conduct, or otherwise, that a lease would be tendered plaintiff without further discussion as to the terms, conditions and details of said lease not fixed by said agreement.

11. That on or about April 1, 1946, plaintiff and defendant Charles W. Mapes, Jr., met with an interior designer at Oakland, California, and examined and discussed plans for furniture and interior designs prepared by a furniture dealer at the request of plaintiff; and that during the month of January, 1946, plaintiff requested from a dealer designs and prices for dining rooms, kitchens, bars and other matters appertaining to hotel equipment within the knowledge of the defendants.

12. That from the execution thereof to and including about the 10th day of April, 1946, the defendants retained $10,000 deposited by plaintiff at the time of the execution of said contract; that the return to plaintiff of said $10,000 was not offered to plaintiff until about the 10th day of April, 1946; that between the date of the execution of the agreement and April 10, 1946, the defendants, or either of them, did not, by word, act or conduct, inform the plaintiff that they would not enter into and execute a lease on the said premises.

13. That the violation of the so-called time limitations in said agreement was the fault

of both parties; that no further discussion as to terms, conditions and details of said lease other than those fixed in said agreement was ever requested or had by either of the parties from the execution of the contract to April 10, 1946.

14. That on or about April 10, 1946, the defendants, without good cause, repudiated said written agreement and declined and refused further performance on their part under it and stated to plaintiff that no lease would be tendered, granted or entered into as contemplated by said agreement.

15. That Irene Gladys Mapes would not enter into an agreement for a lease of said premises, or a lease thereof, with plaintiff unless her son, defendant Charles W. Mapes, Jr., was associated with plaintiff in such agreement or lease.

16. That the deposit of $10,000 cash made by plaintiff was accepted by the defendant Irene Gladys Mapes as a full compliance with the provision of the contract requiring the plaintiff and the son of Irene Gladys Mapes, defendant Charles W. Mapes, Jr., to deposit $20,000 cash as guarantee of the good faith of plaintiff and the said defendant Charles W. Mapes, Jr.

17. That prior to April 10, 1946, nor any other time, was it ever considered by the parties, that plaintiff and said defendant Charles W. Mapes, Jr., were to be granted a lease of the said premises upon the basis of 30% of net earnings to plaintiff and 70% to said defendant Charles W. Mapes, Jr., but it was at all times contemplated by the parties that the net earnings of the contemplated lease would be shared equally by plaintiff and defendant Charles W. Mapes, Jr.

From the foregoing facts, the Court Concludes:

### Conclusions of Law

██ That the plaintiff is not entitled to a decree of this Court for the specific performance of the agreement admitted in evidence herein as Exhibit "C"; and to compel the execution of a lease to plaintiff alone would be making a new contract for the parties, and this the Court cannot do.

The conclusions which I have reached are based upon the following reasons and matters of law:

An examination of the record will disclose that while the defendants, by their acts and conduct subsequent to the execution of said agreement, have waived the time limitations set forth in said agreement, and particularly those in Paragraphs 3 and 11 therein, the remaining provisions of Paragraph 3, and other stipulations of the contract, have not been waived. Before a lease was to be executed, a further discussion of terms was to be had, a discussion of terms and conditions other than those settled in the contract. No lease was to be executed until these additional terms, conditions and details were worked out. No further discussion or further agreement as to terms, conditions and details of lease has occurred.

In Cochrane v. Justice Mining Co., 16 Colo. 415, 26 P. 780, the Supreme Court of Colorado held:

"Under the authorities, to create a valid contract of lease but few points of mutual agreement are necessary: First, there must be a definite agreement as to the extent and bounds of the property leased; second, a definite and agreed term; and, third, a definite and agreed price of rental, and the time and manner of payment. These appear to be the only essentials; the others, such as the covenant for the peaceful possession on the part of the lessor, diligent, proper, workman-like and continuous working with a view to best results, both present and prospective, on the part of the lessee; and where, as in this case, the rental is a share or percentage of the proceeds, the disposition of the ore to the best advantage, the keeping of accurate and honest accounts and making honest returns, are secondary and implied covenants, growing out of the principal agreement."

The contract under discussion here is definite as to the description of the property, the term, the price of rental and the time and manner of payment, but is not complete. In this respect it differs from the contracts ordered specifically enforced in Cochrane v. Justice Mining Co., 16 Colo. 415, 26 P. 780; Dondero v. Turrillas, 59 Nev. 374, 94 P.2d 276, and other cases cited, in that there is here a definite provision that further negotiations were to be had and that no lease was to be executed except as a result of the re-

quired further negotiation as to terms, conditions and details of contemplated lease other than those established by the agreement. ·

The contracts involved in the cases cited above contained no provisions looking to further negotiations. The Circuit Court of Appeals of the Sixth Circuit in Dan Cohen Realty Co. v. National Savings & Trust Co., 125 F.2d 288, 289, held that:

"An agreement to enter into a lease should not be enforced if any of the terms of the lease are left open to future settlement. Until the minds of the parties have met on all material matters, a court should not direct specific performance."

And from the Eighth Circuit we find the case of Scholtz v. Northwestern Mut. Life Ins. Co., 1900, 100 F. 573, 574. There the Court declared the law to be as follows:

"It may be conceded that an agreement to enter into a lease will neither be enforced in equity nor at law if it appears from the face of the 'agreement that any of the terms of the lease, no matter how unimportant they may seem to be, are left open to be settled by future conferences between the lessor and lessee. In such cases there is no complete agreement; the minds of the parties have not fully met; and, until they have, no court will undertake to give effect to those stipulations that have been settled, or to make an agreement for the parties respecting those matters that have been left unsettled."

In the Scholtz case the contract contained no provision such as here for further discussion of terms, conditions and details.

■ Numerous objections to the introduction of evidence were made on behalf of defendants and overruled on the theory that since the right to specific performance is a matter resting largely in the sound discretion of the court, courts have always indulged in great latitude in hearing evidence to determine whether, in equity or good conscience, performance should be enforced. 58 C.J. 1191.

■ Another consideration moves the Court to deny specific performance. If specific performance were decreed, the Court would be compelling antagonistic parties to form a partnership or a relation in the nature of a partnership in the control and management of a large hotel. The possibility of successful operation of this large undertaking would be jeopardized. The record unquestionably indicates antagonism between plaintiff and defendant Charles W. Mapes, Jr., and between plaintiff and defendant Irene Gladys Mapes. As an illustration of the principle involved, the following is quoted from the opinion of the Supreme Court of the United States in Hyer v. Richmond Traction Co., 168 U.S. 471, 18 S.Ct. 114, on page 118, 42 L.Ed. 547:

"But, beyond these relations of the public to the enterprise, courts are not often wont to compel parties to unite interests and work together. And here it may be well to notice that the contract was not one in terms for a partnership in the management of the railway, but only one for a division of the profits. The parties stipulated to cooperate in securing the franchise, and to divide equally the profits, but left the question of control and management unsettled. * * * It may, however, be conceded that there is an implication of joint ownership as well as of joint interest in the management, and in the profits arising therefrom, and thus it may be said that the contract was really one for a partnership. It is seldom that a court of equity will decree that a partnership which has been agreed upon shall be carried into effect. More frequently is it called upon to release parties from partnership agreements on the ground that their antagonism prevents the fulfillment of the purposes of the partnership, and it would seem like a contradiction to force antagonistic parties to form a partnership when it is one of the recognized rules of equity that such antagonism is ground for dissolving a partnership already existing."

Let judgment be entered accordingly.